357 So.2d 912 (1978)
Hilda Taylor, wife of and Russell TAYLOR
v.
AUDUBON INSURANCE COMPANY.
No. 8959.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1978.
Concurring Opinion on Denial of Rehearing May 10, 1978.
Writ Refused June 30, 1978.
*913 Johnston & Duplass, Robert M. Johnston, New Orleans, for defendant-appellant.
Henry W. Kinney, III, New Orleans, for plaintiffs-appellees.
Before LEMMON, SCHOTT and BEER, JJ.
BEER, Judge.
By an act of sale dated February 2, 1968, Mr. and Mrs. Taylor, plaintiff-appellees, acquired from Mr. James G. Ford, now deceased, the property at 551 Bolivar Street, New Orleans. The sale price was $10,000 to be paid at the rate of $100 per month, without down payment or interest. Ford's fire insurance policy covering the property was not amended to reflect the credit sale. Subsequent to Ford's death, Mrs. Ford had the named insured under the policy changed to show her name. Thereafter, she sought and obtained an extra $10 per month payment from the Taylors to cover their share of the insurance premiums and the real estate tax bills that were still being sent to her for payment. The annual insurance premium was about $50, and taxes varied from $50 to $87 per year, from 1967 through 1975. The record shows the Taylors missed two or three of the ten dollar payments per year, and there is conflicting evidence as to whether Mrs. Ford paid the insurance premiums from her own funds or directly from the proceeds of the $10 monthly payments. The record is sufficient to support the trial judge's implicit conclusion that the $10 payments apparently covered a major part of the annual fire insurance premiums of about $50.
On March 1, 1975, the property was totally destroyed by fire. Upon learning that Mrs. Ford's interest in the property was not, in fact, that of sole owner, but, rather, that of mortgagee, the insurance company tendered to her a check for $2,086.35, rather than the $9,000.00 face value of the policy. The sum represented the unpaid balance owed Mrs. Ford by the Taylors (about $1,900.00), plus a refund of a portion of previously paid premiums. The insurance company representative who testified shed little light on the computed basis for this refund. It apparently represented the difference in premiums for a policy on full ownership, and one covering only a decreasing mortgagee's interest.
Plaintiffs filed this suit seeking to recover the difference between the declared value of the insured property ($9,000.00) and the $2,086.35 paid Mrs. Ford. From a judgment in favor of plaintiffs, the insurer appeals, contending that although the purchaser-mortgagor may have had an insurable interest in the property, such interest was not insured by them.
Alternatively, appellant asks for reduction of the judgment from $6,814.00 to $6,100.00, the amount prayed for in plaintiffs' petition.
Appellee has answered the appeal and seeks penalties and attorney's fees.
The trial court noted:
"The plaintiffs contend that the insurance in effect at the time of the fire was full insurance for the protection of the owner and mortgagee, and not as contended by the insurance company as single interest decreasing coverage insurance.

*914 "The evidence preponderates in favor of plaintiffs. Since 1971, the plaintiffs paid for insurance coverage and simply because the policy was not issued in their name they should not be denied their equitable right of recovery. The insurance company got their full coverage premium of approximately $54 annually. Nothing in the policy would lead anyone to the conclusion that the policy was solely issued to cover the mortgagee. After the mortgagee's balance due had been paid, the residue of the amount of the policy should have been paid to the owners, the Taylors, who were bearing the obligation of payment of the premium."
In concluding that the insurer is liable to the mortgagor for the declared value for the house less the mortgage balance due, the trial court relies upon Diaz v. Cherokee Insurance Co., 275 So.2d 922 (La.App. 4th Cir. 1973), Moran v. Kenai Towing and Salvage, Inc., 523 P.2d 1237 (Alaska 1974) and Tillerson v. Highrabedian, 503 S.W.2d 398 (Tex.Civ.App.1973).
In Tillerson, it was agreed between owner, builder, and financier that owner would arrange for builder's risk insurance which would protect all three parties. However, the policy was issued in the name of the owner alone and, pursuant to a claim for fire loss, proceeds of the policy were paid entirely to him. The insurance company, as subrogee, sued builder. By third party demand against the insurer in its own right, builder sought reformation of the contract so as to provide coverage of his interest. In light of circumstances indicating that the builder was to be covered, reformation was allowed. The court remarked:
"When one of two parties, each of whom has an insurable interest in a particular property, agrees to get insurance for the protection of both interests, but does, in fact, procure a policy naming only himself as insured, and the property is damaged or destroyed, the other party, as between the two, is entitled to the proceeds of the policy up to the extent of his loss. Farmers Insurance Exchange v. Nelson, 479 S.W.2d 717 (Tex.Civ.App. Waco, 1972, writ ref'd n. r. e.) 5A John A. Appleman and Jean Appleman, Insurance Law and Practice, sec. 3365 (1970)."
In Moran v. Kenai Towing and Salvage, Inc., supra, the mortgagor (under a sale and lease back agreement) brought suit against the mortgagee, not the insurer, to determine rights to the proceeds of a fire policy procured by the mortgagee but paid for by mortgagor. The court concluded that although fire policies are personal contracts between insured and insurer, which do not attach to property, the proceeds may be impressed with a trust in favor of one other than the named insured.
In Diaz v. Cherokee Ins. Co., supra, suit was brought by a second mortgagee who had acquired his interest on the same date as the first mortgagee. The mortgage required mortgagor to obtain insurance to protect the mortgagees but the name of the second mortgagee was not included on the policy. We determined that in the absence of conflicting claims by the first mortgage holder or the owner, and in light of the fact that by the terms of the policy all mortgagees were intended to be covered, the unnamed second mortgagee had a right to reformation of the policy.
The trial court, in referring to the Taylor's "equitable right of recovery," highlights the critical issue here involved, i. e., should there be equitable reformation of the policy by judicial decree? On the basis of the facts found by the trial court and supported by the record, we answer this query in the affirmative, aware, as we must be, that equitable reformation of any insurance policy by judicial fiat requires caution and restraint.
Were this record to contain affirmative evidence that Audubon Insurance Company would not have covered this particular frame house had they known the Taylors owned it rather than Mrs. Ford, we would be far less inclined to affirm. In fact, any representation made in connection with the obtaining and maintaining of the coverage by Mrs. Ford which would be demonstrably different if submitted by Mr. and Mrs. Taylor could be the basis for a valid argument *915 against reformation, for there is certainly no presumption in its favor. But there is nothing before us which, in any way, indicates that the company would have written the policy in any different way, or charged any different premium, or insured the structure for any different amount, or imposed any different requirements for continuation of the coverage if the named insureds had been Mr. and Mrs. Taylor, or Mrs. Ford and Mr. and Mrs. Taylor as their interests might appear. Under these circumstances, we believe that the rationale of Diaz v. Cherokee Insurance Company, supra, should control.
We reject the appellees' contention with respect to penalties and attorney's fees. The actions of the insurance company were neither arbitrary nor capricious and, in fact, represented, we believe, a valid effort to resolve the knotty problem confronting them.
Finally, appellant contends that the judgment must be reduced to the amount prayed for in plaintiffs' never amended petition, citing Jones v. Louisiana Department of Highways, 338 So.2d 343 (La.App. 3rd Cir. 1976), writ ref., La., 341 So.2d 410. However, we are of the view that La.C.C.P. Article 862 is applicable here and that the able trial judge acted properly in confecting the judgment as he did.
Accordingly, the judgment of the Civil District Court for the Parish of Orleans is affirmed, at appellant's cost.
AFFIRMED.
SCHOTT, Judge, dissenting.
An insurance policy is a contract between the insurer and the insured. In the instant case the parties to the contract were Audubon Insurance Company and Mrs. James G. Ford. I cannot agree with my colleagues that there is any basis in law for making Mr. and Mrs. Taylor a party to a contract when, in fact, they were strangers. The effect of this decision is to disregard the bilateral nature of an insurance contract and hold the insurer liable on an open-ended basis to anyone who may have an interest in the property insured, and to relegate the status of the named insured to a mere technicality.
Diaz v. Cherokee Insurance Co., 275 So.2d 922 (La.App. 4th Cir., 1973) is distinguishable in that it was alleged and proved in that case that when the insurance policy was written it was the intention of the parties to make Diaz the second mortgagee an insured under the policy, and in effect the court reformed the policy so as to make it comply with the intent of the parties when the contract was made.
That is not the situation in the instant case. Here, there never was any intention on the part of Audubon Insurance Company to make a contract with Mr. and Mrs. Taylor. At all times, the contract was with Mrs. Ford. No one can suggest that these parties intended, when the contract was made, to insure Mr. and Mrs. Taylor who subsequently became the owners of the property.
Furthermore, in Diaz the suit was brought by the mortgagee on the basis that the owner had insured the property with the intention of including his interest. The instant suit is brought by the new owner, Mr. and Mrs. Taylor, who are not the insured under this policy and the insured, the former owner, Mrs. Ford, is not a party to these proceedings. If Mrs. Ford, as the insured, had brought this suit for the full policy limits she would have been entitled to recovery and could have collected in behalf of Mr. and Mrs. Taylor because she was the contracting party. She and she alone could enforce the provisions of the contract which she made with Audubon Insurance Company.
I would reverse the judgment of the trial court and dismiss the suit of plaintiffs.
LEMMON, Judge, concurs in the denial of application for rehearing and assigns reasons.
On application for rehearing the insurer argues the inapplicability of the rationale of the Diaz case because "there was no evidence that it was the intention of the parties to make the plaintiffs insureds under the policy".
*916 The insurer clearly intended to insure the owner of the property, since an owner's policy was issued rather than a mortgagee's single interest, decreasing coverage policy, and the premium structure was established accordingly. Mrs. Ford, the named insured, clearly intended to insure the owner of the property (thereby also protecting herself), since she purchased that type of policy and collected the total premium back from the owner.
There was a material misrepresentation by the named insured in the application for insurance, but since the insurer has not claimed any detriment on account of the misrepresentation, the contract should be reformed to reflect the true intention of the parties.