# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-736

## OPELOUSAS GENERAL HOSPITAL AUTHORITY, A PUBLIC TRUST, D/B/A OPELOUSAS GENERAL HEALTH SYSTEM

## VERSUS

## LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A BLUE CROSS/BLUE SHIELD OF LOUISIANA

************
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, DOCKET NO. 16-C-3647-C
HONORABLE ALONZO HARRIS, PRESIDING

************
## SYLVIA R. COOKS
## JUDGE
************

Court composed of Sylvia R. Cooks, John E. Conery, and Candyce G. Perret, Judges.

**AFFIRMED.**

Thomas A. Filo
Cox, Cox, Filo, Camel & Wilson, L.L.C.
723 Broad Street
Lake Charles, LA  70601
(337) 436-6611
COUNSEL FOR PLAINTIFF/APPELLEE:
    Opelousas General Hospital Authority, et al.


Patrick C. Morrow
James P. Ryan
Morrow, Morrow, Ryan, Bassett & Haik
324 West Landry Street
Opelousas, LA  70570
(337) 948-4483
COUNSEL FOR PLAINTIFF/APPELLEE:
    Opelousas General Hospital Authority, et al.

**Stephen B. Murray**
**Stephen B. Murray, Jr.**
**Arthur M. Murray**
**Murray Law Firm**
**Poydras Center, Suite 2150**
**650 Poydras Street**
**New Orleans, LA  70130**
**(504) 525-8100**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Opelousas General Hospital Authority, et al.**

**Mark A. Cunningham**
**Michael C. Drew**
**Jones Walker LLP**
**201 St. Charles Avenue, 49th Floor**
**New Orleans, LA 70170**
**(504) 582-8266**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana**

**Pride J. Doran**
**Doran & Cawthorne, L.L.C.**
**521 E. Landry Street**
**P.O. Box 2119**
**Opelousas, LA 70571**
**(337) 948-8008**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana**

**COOKS, Judge.**

Defendant, Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana (hereafter BCBS-LA), appeals the judgment of the trial court certifying a class of Louisiana healthcare providers sought by Plaintiff, Opelousas General Hospital Authority, a Public Trust d/b/a Opelousas General Health System (hereafter OGHA). Finding no abuse of the trial court's discretion in certifying the class, we affirm the lower court judgment.

OGHA alleged that BCBS-LA's uniform contracting practices amounted to anticompetitive conduct that was in violation of the Louisiana Anti-Trust Statute. La.R.S. 51:122 *et seq.* Specifically, OGHA alleged these unfair contracting practices prohibited Louisiana Blue Cross providers from contracting for reimbursement rates with any other out-of-state Blue Cross insurer, required that Louisiana Blue Cross providers accept Louisiana Blue Cross contracted rates from any other Blue Cross insurer, and excluded any other Blue Cross insurer from entering the Louisiana health insurance marker or contracting for its own reimbursement rates with Louisiana Blue Cross providers. OGHA maintains this results in a monopolistic market share for BCBS-LA and violates anti-trust law under La.R.S. 51:122 and/or 51:123.

Since the filing of this suit on August 24, 2016, there have been several motions in both state and federal court that significantly delayed the proceedings. Although originally set for hearing on June 29, 2017, due to the numerous motions filed by BCBS-LA and the Blue Cross Blue Shield Association, the class certification was not heard until nearly two years later on May 30, 2019. After the hearing on the class certification and filing of post-hearing memoranda by both parties, the trial court rendered judgment certifying the statewide class sought by OGHA on July 29, 2019.

On appeal, BCBS-LA contends the trial court erred in certifying the class because OGHA did not offer any common evidence to satisfy the elements of a violation of Louisiana's antitrust law on a class-wide basis. BCBS-LA also maintains one of OGHA's lead lawyers has an irreconcilable conflict of interest due to his service on the Board of Trustees of OGHA.

## ANALYSIS

In *Baker v. PHC-Minden, L.P.*, 14-2243, p. 1 (La. 5/15/15), 167 So.3d 528, 538, the supreme court set forth the analysis for appellate review of the class certification procedure in Louisiana:

> A class action is "a nontraditional litigation procedure that permits a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common interest to persons so numerous as to make it impracticable to bring them all before the court." *Ford v. Murphy Oil U.S.A., Inc.*, 96-2913 (La.9/9/97), 703 So.2d 542, 544. Its purpose and intent is to adjudicate and obtain res judicata effect on all common issues applicable to persons who bring the action, as well as to all others similarly situated. *Brooks v. Union Pacific R. Co.*, 08-2035, p. 10 (La.05/22/09), 13 So.3d 546, 554.

> The only issue to be considered by the trial court when ruling on certification, and by this Court on review, is whether the case at bar is one in which the procedural device is appropriate. In determining the propriety of such action, the court is not concerned with whether the plaintiffs have stated a cause of action or the likelihood they ultimately will prevail on the merits, but whether the statutory requirements have been met. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974).

> This determination of whether a class action meets the requirements imposed by law involves a rigorous analysis in which the trial court "must evaluate, quantify, and weigh [the relevant factors] to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness." *McCastle v. Rollins Environmental Services of Louisiana, Inc.*, 456 So.2d 612, 618 (La.1984). Doing so, the trial court must actively inquire into every aspect of the case and not hesitate to require showings beyond the pleadings. *Brooks*, 08-2035 at p. 10, 13 So.3d at 554. "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Dupree v. Lafayette Ins. Co.*, 09-2602, p. 7 (La. 11/30/10), 51 So.3d 673, 680.

2

Any errors to be made in deciding class action issues should be in favor of and not against the maintenance of the class action, because a class certification order is always subject to modification or decertification, "if later developments during the course of the trial so require." *McCastle*, 456 So.2d at 620. To that end, La.Code. Civ. Proc. art. 592(A)(3)(d) provides the trial court "may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action." La.Code. Civ. Proc. art. 592(A)(3)(d). Nonetheless, the trial court should evaluate the case closely before certifying the class in light of the consequent burdens of giving notice and additional discovery. See *Dupree*, 09-2602 at p. 7, 51 So.3d at 680.

A trial court has wide discretion in deciding whether to certify a class. *Brooks*, 08-2035 at p. 10, 13 So.3d at 554. Subject to the manifest error standard, its factual findings can only be reversed upon finding, based on the entire record, no reasonable factual basis for the factual finding and the factfinder is clearly wrong. *Stobart v. State, through Department of Transp. and Development*, 617 So.2d 880, 882 (La.1993). However, we review its ultimate decision of whether or not to certify the class under the abuse of discretion standard. *Dupree*, 09-2602 at p. 7, 51 So.3d at 680. Implicit therein "is recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Brooks*, 08-2035 at p. 11, 13 So.3d at 554.

In Louisiana, the requirements for class certification are set forth in La.Code Civ.P. art. 591. Article 591(A) provides five threshold requirements for certification of a class:

A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of law or fact common to the class.

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.

(4) The representative parties will fairly and adequately protect the interests of the class.

(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

3

These prerequisites are commonly referred to as numerosity, commonality, typicality, adequacy of representation, and objective definability of the class.

The burden of establishing the statutory criteria have been satisfied falls on the party seeking to maintain the class action. *Dupree v. Lafayette Ins. Co.*, 09-2602, (La.11/30/10), 51 So.3d 673. Thus, OGHA was required to prove the five prerequisites of La.Code Civ.P. art. 591(A), namely numerosity, commonality, typicality, adequacy of the representative parties, and objectively definable class.

"Once these five prerequisites have been met, La.Code Civ.P. art. 591(B) lists three additional criteria, one of which must also be satisfied for certification depending on the type of class action sought." *Baker*, 167 So.3d at 358. Here, the additional requirement needed for class certification is set forth in La.Code Civ.P. art. 591(B)(3), which provides:

> (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
>
> > (a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;
> >
> > (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> >
> > (c) The desirability or undesirability of concentrating the litigation in the particular forum;
> >
> > (d) The difficulties likely to be encountered in the management of a class action;
> >
> > (e) The practical ability of individual class members to pursue their claims without class certification;
> >
> > (f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation.

4

As this court noted in *Emigh v. West Calcasieu Cameron Hosp.*, 13-2985 (La.App. 3 Cir. 11/2/17), 231 So.3d 140, 148, we must first "review the trial court's factual findings . . . as to whether [OGHA] met their burden of proving the requirement[s] set forth in La.Code Civ.P. art. 591(A)."

### 1. Numerosity.

The numerosity prerequisite is not based on the number of class members alone. The core conditions of the numerosity requirement is that "joinder is impracticable and there is a definable group of aggrieved persons." *Doe v. Southern Gyms, LLC*, 12-1566, p. 12 (La. 3/19/13), 112 So.3d 822, 831.

OGHA presented testimony that the number of potential class members would be approximately 11,000 health care providers throughout Louisiana. Mica Toups, a Network Development Representative for BCBS-LA, testified in the Acadiana area alone, there would be "thousands" of potential class members. In *Emigh*, this court held a class of 254 potential class members made joinder of the claims impractical and satisfied the numerosity requirement. We find no error in the trial court's finding that numerosity was met.

### 2. Commonality.

Commonality refers to "a common nucleus of operative facts such as would justify allowing the class action to proceed." *McCastle v. Rollins Envtl. Servs. of Louisiana, Inc.*, 456 So.2d 612, 620 (La. 1984). The commonality requirement is met if plaintiffs can demonstrate that there is "one issue, the resolution of which will affect all or a significant number of plaintiffs." *Clark v. Trus Joist MacMillian*, 02-676, 02-512, p. 8 (La.App. 3 Cir. 12/27/02), 836 So.2d 454, 461 (citing *Duhe v. Texaco, Inc.*, 99-2002, pp. 12 (La.App. 3 Cir. 2/7/01), 779 So.2d 1070, 1078). The court in *Duhe* noted the "test of commonality is not a demanding one, and requires only that there be at least one issue, the resolution of which will affect all or a

significant number of the putative class members. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5 Cir.1999), *cert. denied*, 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000)." *Id.* at 1078. The *Duhe* court further explained "[t]he mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover, does not preclude class certification." *Id.* at 1085.

In the present class action, OGHA is alleging a common practice (BCBS-LA's business model) violated La.R.S. 51:122 and La.R.S. 51:123. In her testimony Mica Toups acknowledged that all the contracted providers were subject to this course of conduct. Dr. Lawrence Wu, a Health Care Economist and Expert in Anti-Trust Law who testified for BCBS-LA, stated there was a common course of conduct. We agree with OGHA and the trial court that the commonality requirement was met as it was demonstrated the course of conduct by BCBS-LA gave rise to a common nucleus of operative facts, the resolution of which will affect all or a significant number of the putative class members. As noted, simply because different rates may apply to providers in different areas of Louisiana will not defeat class certification.

### 3. Typicality.

The typicality requirement necessitates that the claims of class representatives are typical of all members. "It satisfies typicality if the representative plaintiffs' claims arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory." *Duhe*, 779 So.2d at 1079.

BCBS-LA argues typicality is not met here because OGHA, as a rural hospital, "is differently situated from, for example, a chiropractor group in Baton Rouge, a physical therapist partnership in New Orleans, or a solo practitioner neurologist in Lafayette." The trial court entertained this argument below, and in its written reasons, stated that "the claims all arise out of the same legal theory, a violation of the statute, advance[d] by plaintiff on behalf of the entire class." We find no error

in this conclusion. BCBS-LA acknowledged the complained of conduct is applicable to all prospective class members, who are contracted providers of BCBS-LA, and the same legal theory, a violation of La.R.S. 51:122 and/or La.R.S. 51:123, has been advanced by OGHA. As OGHA notes, although different areas may have different average rates for services, the calculation of loss will be the same, i.e., the difference between the allegedly unlawful contracted rate and the providers billed charges for the services. Therefore, we find no abuse of the trial court's vast discretion in finding typicality was met in the present case.

### 4. *Adequacy of Representation.*

In *Duhe*, 779 So.2d at 1079, this court discussed the adequacy of representation requirement:

> The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11 Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988). . . . The test often used for adequate representation consists of three elements: (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class; (2) the named representatives must have a sufficient interest in the outcome to insure vigorous advocacy; and (3) counsel for the named plaintiffs must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. *Davis v. Cash For Payday, Inc.*, 193 F.R.D. 518 (N.D.Ill.2000).

The trial court noted the following concerning Thomas Filo, who is an attorney for the proposed class and argued this case before this court on appeal:

> Tom Filo, one of the attorneys for [OGHA], testified that he has been involved in class action cases since 2004; has had twenty plus new law suits involving reimbursement issues; that all of their cases have been certified, that he filed the first class action lawsuit in Louisiana involving healthcare providers. . .

The trial court then concluded the adequacy of representation requirement was met, finding "the class counsel and class representatives have extensive experience in serving as representatives for litigation and settlement of cases involving health care provider classes where contracted reimbursement rates were challenged as

7

unlawful."[1]  The trial court noted OGHA has served as "both a class representative and has been involved as a class member in a number of cases that were litigated or settled."

To date in these proceedings, counsel for OGHA has vigorously and successfully defended numerous motions filed by BCBS-LA and the Blue Cross Blue Shield Association in both state and federal court.  We find no abuse of discretion in the trial court's finding that adequacy of representation was met herein.

BCBS-LA also asserts there is a clear and irreconcilable conflict of interest between OGHA, the proposed class and one of its lead attorneys.  Specifically, BCBS-LA argues:

> In this case, clear and undisputed conflicts of interest exist between OGH and putative class counsel and the remainder of the class. The team of lawyers seeking to be named as class counsel is headed by Mr. [Patrick] Morrow, a member of the Board of Trustees of OGH who executed the engagement letter with OGH on behalf of all of the attorneys.  Mr. Morrow's fiduciary relationship with OGH creates a conflict between OGH and the class, and between the putative attorneys and the class.  With Mr. Morrow owing a fiduciary duty to OGH, he and his co-counsel are unable as a matter of law to act in the best interest of the class as a whole.

The trial court was presented with that argument below, and dismissed BCBS-LA's argument as regards Mr. Morrow's ability to serve as class counsel.  The trial court relied on a Louisiana Board of Ethics opinion which concluded as follows:

> . . . the Code of Governmental Ethics would not prohibit Patrick Morrow from serving as a member of the St. Landry Parish Hospital Service District No. 2 or the Opelousas General Hospital Trust Authority d/b/a Opelousas General Hospital while his law firm . . . has an ongoing representation of many hospitals, including Opelousas General Hospital . . . Since the St. Landry Parish Hospital District No. 2 or the Opelousas General Hospital Trust Authority d/b/a Opelousas General Hospital does not have the authority to direct the litigation or

---

[1] OGHA notes its counsel's successful participation in other class actions, including *Williams v. SIF Consultants of Louisiana, Inc.*, 12-419 (La.App. 3 Cir. 11/7/12), 103 So.3d 1172, *writ denied*, 12-2637 (La.3/15/13), 109 So.3d 381; *Thibodeaux v. American Lifecare, Inc.*, 14-931 (La.App. 3 Cir. 2/11/15), 157 So.3d 1193, *writ denied*, 15-531 (La. 5/15/15), 170 So.3d 970; and *Opelousas General Hospital Authority v. Fairpay Solutions, Inc.*, 13-17 (La.App. 3 Cir. 7/3/13), 118 So.3d 1269, *writ denied*, 17-1319 (La. 9/15/17), 225 So.3d 480.

affect the representation by Mr. Morrow or his law firm in these class actions, there is no transaction which Mr. Morrow is in any way interested under the supervision or jurisdiction of his board.

Further, the Board concluded . . . Mr.Morrow would not be prohibited from providing compensated services to [his law firm] while it represents hospitals including the St. Landry Parish Hospital District No. 2 or the Opelousas General Hospital Trust Authority d/b/a Opelousas General Hospital.

We find nothing presented by BCBS-LA which would persuade this court to rule contrary to the Board of Ethics' opinion. Moreover, we find nothing in this assertion against Mr. Morrow that would be a factor in denying class certification in the present case. We find no error in the trial court's ruling that Mr. Morrow could participate as counsel in this matter.

### 5. *Definability.*

Under the final requirement, OGHA must show the class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment rendered in the case. La.Code Civ. Proc. art. 591(A)(5); *Baker*, 167 So.3d 528. OGHA set forth the proposed class as follows:

All Louisiana healthcare providers who, as of the date of the filing of the instant petition, 1) are citizens of the state of Louisiana, and 2) are contracted with Defendant [BCBS-LA], and 3) have had one or more medical bills reimbursed pursuant to such contract for any services rendered to a patient in the state of Louisiana.

We find the OGHA's definition clearly meets this requirement. BCBS-LA's own billing system [the FACET system], will serve in defining the class as these documents can be utilized to ascertain the harm caused to each class member as each provider's reimbursement rate and billed charges are available for all services rendered through the contract with BCBS-LA.

### 6. *Common Questions of Law and Fact Predominate.*

Having concluded that OGHA satisfied the five requirements of La.Code Civ.P. art. 591(A), we must lastly find OGHA also met the additional criteria set

forth in La.Code Civ.P. art. 591(B)(3), that "common questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class is superior to other methods for the fair and efficient adjudication of the controversy."

BCBS-LA argues the "antitrust impact" in this case cannot be measured through common evidence across the proposed class. BCBS-LAS again focuses on the fact that reimbursement rates differ across geographic regions of the state, provider types and specialties, patient volume and mix, etc. They contend courts would be forced to make individualized inquiries for various providers to determine the individual antitrust injury to each. However, as OGHA argued and the trial court recognized, the proposed class members in this case are healthcare providers that allege the contracting practices of BCBS-LA violate Louisiana antitrust law and are invalid regardless of the varying reimbursement amounts. As set forth above, the necessary information is ascertainable through BCBS-LA's billing system. Damages, thus, would be a calculation between the billed charges and the alleged invalid contracted rate for each provider.

Accordingly, we find the common claim advanced by the proposed class is that BCBS-LA's contracted rate results from the business model that BCBS-LA applies to all contracted healthcare providers. Therefore, we find a common question of law and fact predominates over the individual issues such that a class procedure is the most efficient way to resolve the issues presented.

### DECREE

For the foregoing reasons, the judgment of the trial court certifying this matter as a class action is affirmed. All costs of this appeal are assessed against appellant, Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana.

**AFFIRMED.**